IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

NATHAN L .SMITH,

           Petitioner,

v.                                      CIVIL ACTION NO.  5:03-cv-02366
                                      (Criminal No. 5:01-cr-00004-04)

UNITED STATES OF AMERICA,

           Respondent.

**MEMORANDUM OPINION**

      By Standing Order entered on May 20, 2002, and filed in this case on November 18, 2003, this action was referred to United States Magistrate Judge R. Clarke VanDervort for submission of proposed findings and a recommendation ["PF&R"].  Magistrate Judge VanDervort filed his PF&R on December 29, 2006 [Docket 607].  In that filing, the magistrate judge recommended that this Court deny Petitioner Nathan L. Smith's Motion to Vacate his Sentence pursuant to 28 U.S.C. § 2255, as amended [Dockets 542 & 551], and dismiss this case from the Court's docket.

      The Court is not required to review, under a *de novo* or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed.  *Thomas v. Arn*, 474 U.S. 140, 150 (1985).  In addition, this Court need not conduct a *de novo* review when a party "makes general and conclusory objections that do not direct the Court to a specific error in the magistrate's proposed findings and recommendations."  *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982).  *See also Page v. Lee*, 337

F.3d 411 (4th Cir. 2003); *Johnson v Zema Sys. Corp.*, 170 F.3d 734 (7th Cir. 1999) (if party fails to object to magistrate judge's report and recommendation in district court, she waives appellate review of both factual and legal questions; if party objects in district court on some issues and not others, she waives appellate review of issues to which she has not objected). Here, objections to Magistrate Judge VanDervort's PF&R were due by February 12, 2007, pursuant to 28 U.S.C. § 636(b)(1) and FED. R. CIV. P. 72(b) and Magistrate Judge VanDervort's Order entered January 19, 2007. Petitioner, by counsel Jeffrey M. Wakefield, timely filed objections to the PF&R on February 12, 2007 [Docket 610].

## I. BACKGROUND

In his PF&R, the magistrate judge reviewed the factual and procedural history of this action up to the date of the PF&R's filing. In short, Petitioner is a prisoner in confinement at FCI Beckley. Petitioner was found guilty by a jury on June 20, 2001, of conspiring to distribute 50 grams or more of cocaine base, 21 U.S.C. § 846 (Count One of the Superceding Indictment), and distribution of cocaine base, 21 U.S.C. § 841(a)(1) (Count Two of the Superceding Indictment). On September 7, 2001, Petitioner was sentenced by Chief Judge Haden to 360 months of imprisonment for Count One and 240 months of imprisonment for Count Two, the sentences to run concurrently. On appeal, the Fourth Circuit upheld the sentence in an unpublished opinion dated June 25, 2002.

Petitioner has filed the instant *habeas corpus* action pursuant to 28 U.S.C. § 2255, seeking to vacate his sentence. As the basis for his claim, Petitioner contends that he was provided ineffective assistance of counsel during his trial, sentencing, and appeal. At trial and sentencing, Petitioner was represented by William S. Winfrey, Esq. On appeal, Petitioner was represented by Joan A. Mooney, Esq. Petitioner specifically details ten different ways in which his counsel were ineffective. In his

PF&R, Magistrate Judge VanDervort recommends dismissing this case because Petitioner's legal representation was not ineffective in any of the ten ways alleged.

## II. OBJECTIONS TO PF&R

In his objections to the PF&R, Petitioner contests certain proposed findings of the magistrate judge.[1]  Specifically, Petitioner objects to proposed findings 2, 3, 4, 5, 8, 9, and 10. The Court conducted hearings to address Petitioner's objections on March 16, 2007, March 22, 2007, and March 30, 2007. During the March 16 hearing, Petitioner withdrew objections 3 and 10. For the reasons stated on the record during the March 16 hearing, the Court **OVERRULED** objections 4, 8, and 9. The remaining objections, 2 and 5, are addressed below.

*A. Legal Standards*

FED. R. CIV. P. 72(b) provides, in relevant part, that:

> [A] party may serve and file specific, written objections to the proposed findings and recommendations. A party may respond to another party's objections within 10 days after being served with a copy thereof. The district judge to whom the case is assigned shall make a de novo determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition to which specific written objection has been made in accordance with this rule. The district judge may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions.

*Accord* 28 U.S.C. § 636. Given this standard, there are no burdens of proof with regard to the objections *per se* because the District Court must review the record *de novo*. Rather, the burdens in this proceeding are those applicable to § 2255 petitions.

---

[1] Magistrate Judge VanDervort numbered his proposed findings for Petitioner's claims of ineffective assistance of counsel one through ten. Petitioner numerically corresponds his objections to the PF&R.

A claim of ineffective assistance of counsel is properly brought in a § 2255 petition. *United States v. DeFusco*, 949 F.2d 114, 120-21 (4th Cir. 1991). For Petitioner to prevail on his § 2255 claim of ineffective assistance of counsel, he bears the burden of proving his allegations by a preponderance of the evidence. *See Vanater v. Boles,* 377 F.2d 898 (4th Cir. 1967)*; United States v. Allgood,* 48 F. Supp. 2d 554, 558 (E.D. Va. 1999). Specifically, a petitioner must prove that counsel's representation fell below an objective standard of reasonableness and that such deficient performance caused him prejudice. *See Strickland v. Washington,* 466 U.S. 668 (1984). Prejudice is defined as "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Id.* at 694. Under *Strickland*, "there exists a strong presumption that counsel's conduct was within a wide range of reasonably professional conduct, and courts must be highly deferential in scrutinizing counsel's performance." *Kratsas v. United States,* 102 F. Supp. 2d 320, 322 (D. Md. 2000).

  B. *Counsel's Failure to Investigate and Introduce Exculpatory Evidence* (Objs. 2 and 5)

Petitioner's primary objection to the PF&R is that, contrary to the magistrate judge's findings, Mr. Winfrey failed to properly investigate and introduce certain evidence at trial. First, Petitioner contends that Mr. Winfrey failed to introduce evidence that the officer who analyzed the drugs at issue in Count Two, Trooper T. G. White, falsified forensic lab reports in certain investigations. Second, Petitioner contends that Mr. Winfrey failed to introduce the testimony of Freddie Gray, one of Petitioner's co-defendants, to rebut the eyewitness testimony of West Virginia State Trooper Lee Ayers.

### *(1) Trooper T. G. White Credibility*

Trooper T. G. White performed an analysis on the drugs purchased from Petitioner as charged in Count Two. Prior to the trial of this matter, the FBI found irregularities in certain drug analyses of Trooper White and the West Virginia State Police Forensic Laboratory where he was employed. While these irregularities did not relate to Petitioner's case, the United States nonetheless had Petitioner's drugs re-tested by the DEA, and the parties stipulated to the DEA's findings. No one from the West Virginia State Police Lab, including Trooper White, testified at Petitioner's trial. The magistrate judge recommended finding that because the drugs were re-tested by the DEA, Mr. Winfrey did not provide ineffective assistance in failing to introduce evidence of Trooper White's drug testing irregularities. Petitioner objects to this proposed finding, arguing that Mr. Winfrey should have introduced Trooper White's testing irregularities in order to "raise the possible defense that the drugs subsequently supplied to the DEA for testing were not those drugs allegedly purchased by Trooper Ayers."[2]

At the March 16, 2007 hearing, the Court heard testimony from Mr. Winfrey regarding his decision not to introduce the Trooper White evidence. Mr. Winfrey testified that he was aware that the drugs were in Trooper White's possession for a period of time and that Trooper White had credibility issues. Mr. Winfrey chose not to introduce the Trooper White evidence, however, because "as a strategic matter, we stipulated to [the DEA's test results], because the evidence in the case was

---

[2] The Court notes that Petitioner's argument that the drugs supplied to the DEA were not those purchased by Trooper Ayers is raised for the first time in Petitioner's objections to the PF&R. Because the Court will overrule this objection for the reasons stated herein, the Court need not consider the procedural irregularity of raising new matters in objections to a magistrate judge's proposed findings and recommendation. *See Jesselson v. Outlet Assocs. of Williamsburg*, 784 F. Supp. 1223, 1228 (E.D. Va. 1991).

not that they weren't sold, but the defense was [Nathan Smith] didn't sell them." (March 16 Transcript at 35-36.)  Mr. Winfrey chose not to introduce alternative defenses because, in his experience, juries should be presented with a simple, consistent defense to a criminal drug charge.

The Court must "evaluate the reasonableness of counsel's decision in light of "the circumstances of counsel's challenged conduct, and . . . from counsel's perspective at the time." *Strickland,* 466 U.S. at 689.  In so doing, the Court "must indulge a strong presumption . . . that, under the circumstances, the challenged action might be considered sound trial strategy." *Id*.  The Court **FINDS** that Mr. Winfrey's decision to present only the defense that his client did not sell the drugs at issue, and not also contest the drugs' authenticity or present a chain of custody defense, is not constitutionally deficient and certainly not "below the wide range of professionally competent performance." *Griffin v. Warden, Md. Corr. Adjustment Ctr.*, 970 F.2d 1355, 1357 (4th Cir. 1992).[3]

(2) *Freddie Gray Testimony*

Petitioner also argues that Mr. Winfrey should have investigated and introduced the testimony of Freddie Gray to contradict the evidence that he committed the crime charged in Count Two. Count Two specifically charges that Petitioner distributed crack on April 27, 2000.  At trial, Trooper Ayers testified that on April 27, 2000, he traveled to the Beckley West Apartment Complex to purchase drugs as part of a police investigation.  In the parking lot of the complex, Cedrick Gray,[4]

---

[3]  The Court also notes that even if Mr. Winfrey had challenged the chain of custody of the drugs, Trooper Ayers' testimony at trial demonstrates that he could have provided chain of custody testimony that would have been sufficient for the drugs' admission. *United States v. Jones*, 356 F.3d 529, 536 (4th Cir. 2004) (missing link in the chain of custody does not prevent the admission of real evidence, so long as there is sufficient proof that the evidence is what it purports to be and has not been altered in any material respect).

[4]  Cedric Gray is the brother of Freddie Gray.

a co-defendant of Petitioner under the original Indictment,[5] approached and offered to sell drugs to Trooper Ayers. Trooper Ayers then went inside Apartment 321 to investigate. In fact, Trooper Ayers testified at trial that "DJ" Gray, *i.e.* Freddie Gray, another co-defendant under the original Indictment, led him to the door of the apartment and let him in. There were several individuals both inside and outside the apartment at that time. As Trooper Ayers was standing in the living room of the apartment, Petitioner and Cedrick Gray entered the apartment. After selling two crack rocks to an unidentified individual, Petitioner sold $200 worth of crack to Trooper Ayers. Trooper Ayers then left the apartment.

In support of his § 2255 filing, Petitioner has attached the Affidavit of Freddie Gray, which is dated February 7, 2002, several months after Petitioner's trial. Freddie Gray was also called as a witness at the March 22, 2007 hearing. In his Affidavit and at the March 22 hearing, Freddie Gray testified that he was in Apartment 321 at the same time as Trooper Ayers on April 27, 2000, but that it was he, and not Petitioner, who sold the crack to Trooper Ayers. Freddie Gray further testified that no one interviewed him about the events of April 27, 2000, prior to Petitioner's trial. Freddie Gray also testified that if he had been called to give testimony at Petitioner's trial, he would have testified that he, and not Petitioner, sold the crack to Trooper Ayers.[6] Freddie Gray did not, however, make any attempts to testify on Petitioner's behalf at trial.[7]

---

[5] Only two defendants were named in the Superceding Indictment because the other defendants in the original Indictment had plead guilty.

[6] Although the Court will not reach this issue, Freddie Gray's credibility was substantially challenged and eroded at the hearing by cross examination and by his own testimony.

[7] Under the original Indictment, Freddie Gray was charged with, and plead guilty to, distributing crack on April 6, 2000, but he was not charged with distributing crack on April 27, 2000. Thus, by
(continued...)

At the March 16 hearing, Mr. Winfrey was questioned about why he did not discover and introduce Freddie Gray's testimony at Petitioner's trial:

> Government – Q: Did you have any reason at any point before you heard about this affidavit from Freddie Gray to think that the sale that was the subject of Count Two of the indictment of which the defendant was conducted – convicted, actually was between Trooper Ayers – Sergeant Ayers and Freddie Gray rather than Trooper Ayers and the defendant?
>
> Mr. Winfrey – A. No, ma'am. I mean, in all the times that I talked to Mr. Smith, he never said, "There is somebody else that looks like me. You know, it could have been this guy. It could have been somebody else[.]"
>
> \*\*\*
>
> Government – Q: Did the defendant ever discuss with you a specific alibi for the date and time of the buy from [Trooper Ayers] . . . the subject of Count Two of the indictment?
>
> Mr. Winfrey – A. No, just that: It wasn't me; I wasn't there.
>
> \*\*\*
>
> Mr. Winfery – A. Mr. Smith and I had several conversations about all of these people. My notes indicate that the only thing he could tell me about DJ [i.e., Freddie Gray] was -- is that DJ -- to cross-examine DJ, DJ had beat up his girlfriend, and that's the only information he had about Mr. Smith -- Mr. Smith had that he told me about.

(March 16 Transcript at 25, 66, and 76.)

Mr. Winfrey further testified that he did not interview Freddie Gray because all of Petitioner's co-defendants were represented by counsel and were not cooperating with each other. Mr. Winfrey did not recall speaking, specifically, with Freddie Gray or his attorney Edward Weis, Esq. Mr. Winfrey did recall speaking with the attorneys for other co-defendants, and those attorneys informed

---

[7](...continued)
testifying at Petitioner's trial, Freddie Gray could have subjected himself to a new drug charge, a voided plea agreement, loss of sentencing reductions, sentencing enhancements, and a perjury charge.

him that none of the co-defendants were speaking with one another "until the Government debriefed them."[8]

"In rare cases, an attorney's failure to investigate . . . can constitute ineffective assistance of counsel." *Timms v. United States*, 375 F. Supp. 2d 781, 785 (N.D. Ill. 2005). The duty to investigate was explained by the Supreme Court in *Strickland*:

> The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information. For example, when the facts that support a certain potential line of defense are generally known to counsel because of what the defendant has said, the need for further investigation may be considerably diminished or eliminated altogether. And when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable. In short, inquiry into counsel's conversations with the defendant may be critical to a proper assessment of counsel's investigation decisions, just as it may be critical to a proper assessment of counsel's other litigation decisions.

*Strickland v. Washington,* 466 U.S. at 691.

In this case, Petitioner provided his attorney, Mr. Winfrey, with no reason to believe Freddie Gray or anyone else in particular committed the crime for which Petitioner was charged in Count Two. Further, Petitioner did not provide his attorney with the names of <u>any</u> potential exculpatory witnesses to investigate.[9]

---

[8] Trooper Ayers' notes of the debriefing of Freddie Gray on May 15, 2001, were introduced at the March 30, 2007 hearing. It is unclear from the record whether Mr. Winfrey received these notes in discovery. However, the notes do not mention Petitioner Nathan Smith in any way, although Trooper Ayers testified that Freddie Gray would have been asked about Petitioner, and that the silence of the notes as to Petitioner means that Freddie Gray had offered nothing about Petitioner.

[9] The Court specifically notes that Petitioner chose not to take the witness stand in these proceedings to rebut Mr. Winfrey's testimony regarding his failure to provide Mr. Winfrey with any leads for his
(continued...)

The *Strickland* analysis is not conducted in omniscient hindsight. *Strickland*, 466 U.S. at 689. In the period of time leading to Petitioner's trial, Mr. Winfrey would have known general information about the co-defendants and the case, and, more specifically, he would have been aware of the presence of a number of persons on April 27, 2000, in or near the apartment in question. However, he had no information from the Petitioner or any other source that would have singled out anyone as having exculpatory information regarding the Petitioner. The Court is aware of no authority requiring Mr. Winfrey to interview *everyone* in order to meet the *Strickland* standard.

Of course, the Gray Affidavit did not exist at that time.[10] Whether Mr. Winfrey had it or not, the Government's debriefing note of Freddie Gray revealed nothing. There was simply nothing pointing Mr. Winfrey to Freddie Gray in particular.

For all of these reasons, the Court **FINDS** that Mr. Winfrey did not provide ineffective assistance in not interviewing Freddie Gray, just as Mr. Winfrey was not ineffective in not interviewing, or attempting to interview, Petitioner's co-defendants or random residents and visitors of the Beckley West Apartment Complex as a part of some kind of fishing expedition for exculpatory evidence he had no particular reason to believe existed.[11]

Petitioner's objections numbered 2 and 5 are **OVERRULED**.

---

[9](...continued)
investigation of potential exculpatory witnesses. For that reason and the other reasons stated herein, Petitioner has failed to meet his burden of proof.

[10] Petitioner could have, but has not, asserted that the Freddie Gray Affidavit constitutes newly discovered evidence sufficient to support his request for vacating his sentence. *See Hazel v. United States*, 303 F.Supp.2d 753, 757-58 (E.D. Va. 2004) (discussing newly discovered evidence in the context of § 2255 motions).

[11] Because the Court finds that Mr. Winfrey's representation of Petitioner did not fall below the *Strickland* standard, it need not reach the prejudice analysis.

*III.  CONCLUSION*

Based on the above, the Court adopts the recommendations contained in the PF&R, **OVERRULES** Petitioner's objections to the PF&R, **DENIES** Petitioner Nathan L. Smith's Motion to Vacate his Sentence pursuant to 28 U.S.C. § 2255, as amended [Dockets 542 & 551], and **DISMISSES** this case from the Court's docket.  A Judgment Order will be entered this day implementing the rulings contained herein.

ENTER:     March 31, 2007

_____
THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE